### IN THE UNITED STATES DISTRICT COURT FOR THE
### WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| WILLARD "WILT" E. BROWN, JR., )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>CITY OF HOBART, OKLAHOMA, )<br>)<br>Defendant. ) | NO. CIV-12-0189-HE |

### ORDER

Plaintiff Willard "Wilt" E. Brown, Jr., sued defendant City of Hobart, Oklahoma ("Hobart") for age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and for retaliatory discharge in violation of Oklahoma's public policy.  Defendant moved for summary judgment, which is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).  "A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit.  A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented." Tabor v. Hilti, Inc., 703 F.3d 1206, 1215 (10th Cir. 2013) (citation omitted).  Defendant's motion is now at issue.

The court has viewed the evidence and any reasonable inferences that might be drawn from it in the light most favorable to plaintiff, the nonmoving party, and concludes that defendant's motion should be granted.

### Background

The City of Hobart has a statutory council-manager form of government as defined

in 11 Okla. Stat. § 10-101 *et seq*.  Thomas Talley is the mayor of Hobart and is also a member of the Hobart City Council, which is composed of five elected members.  Plaintiff was hired as the City Manager of Hobart in 2000.  On April 19, 2011, at the age of 72, plaintiff was terminated from that position.  Plaintiff contends that several statements made by Mayor Talley to the press both before and after plaintiff's termination indicate that plaintiff was terminated because of his age in violation of the ADEA.  Plaintiff also asserts a claim under Oklahoma's <u>Burk</u> tort, <u>Burk v. K-Mart Corp.</u>, 770 P.2d 24 (Okla. 1989), alleging that he was terminated in retaliation for attempting to collect from Mayor Talley money allegedly owed by him to the city for airplane hanger rental fees and water bills.

Analysis

Defendant asserts that it is entitled to summary judgment on plaintiff's ADEA claim because plaintiff does not fall within the definition of "employee" in that statute and therefore falls outside of its protection.  The statute excludes from the definition of "employee":

> any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any <u>person chosen by such officer to be on such officer's personal staff, or an appointee on the policymaking level</u> or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office.

29 U.S.C. § 630(f) (emphasis added).[1]  Defendant contends that plaintiff falls within the

---

[1] Because Title VII includes these same exemptions from the definition of "employee," see 42 U.S.C. § 2000e(f), a court may look to cases in the Title VII context for guidance. See <u>Kelley v. City of Albuquerque</u>, 542 F.3d 802, 808 n.5 (10th Cir. 2008).

statutory exemption as either a person chosen by an elected officer to be on the officer's personal staff, or as an appointee on the policymaking level.

The "personal staff" exemption is not applicable here. That exemption applies to individuals "chosen by an elected official to be on such officer's personal staff." Kelley, 542 F.3d at 808 n.7. Courts look to a non-exhaustive list of factors focusing on the relationship between the elected official and the plaintiff to determine whether the plaintiff falls within this definition. *Id*. Those factors include:

> (1) whether the elected official has plenary powers of appointment and removal, (2) whether the person in the position at issue is personally accountable to only that elected official, (3) whether the person in the position at issue represents the elected official in the eyes of the public, (4) whether the elected official exercises a considerable amount of control over the position, (5) the level of the position within the organization's chain of command, and (6) the actual intimacy of the working relationship between the elected official and the person filling the position.

*Id*. (quoting Nichols v. Hurley, 921 F.2d 1101, 1110 (10th Cir. 1990)). However, it is clear from the plain language of the statute (exemption applies to an individual "chosen by such officer") and the application of these factors (emphasizing the singular nature of the elected official) that the "personal staff" exemption does not apply in this case. Plaintiff did not serve on the staff of a single elected official, but rather was a city officer selected by a group of five elected officials. *See* Gomez v. City of Eagle Pass, 91 F. Supp. 2d 1000, 1006 (W.D. Tex. 2000) (holding that a city manager did not qualify for the "personal staff" exemption because she answered "not to an elected official, but to a collective decision-making body"—the city council). Further, by Oklahoma statute, a city manager is described as the

"chief executive officer" of the city, seemingly connoting more than service as a staff member to an elected official. 11 Okla. Stat. § 10-113. Defendant has failed to show that plaintiff's circumstances fall within this exemption and defendant is not entitled to summary judgment on that basis.

The court reaches a different conclusion as to the "appointee on the policymaking level" exemption. As the plaintiff points out, the Tenth Circuit has interpreted this exception narrowly, holding that it applies to an individual "appointed by an elected official to a policy making position" and that it did not extend to a staff director who did not "formulate policy." Anderson v. City of Albuquerque, 690 F.2d 796, 800-801 (10th Cir. 1982). However, subsequent Supreme Court precedent casts doubt on whether an employee must actually "formulate policy" to fall within this exception. In deciding whether state judges fell within the ADEA policymaking exemption, the Court noted:

> The Governor stresses judges' policymaking responsibilities, but it is far from plain that the statutory exception requires that judges actually make policy. The statute refers to appointees "on the policymaking level," not to appointees "who make policy." It may be sufficient that the appointee is in a position requiring the exercise of discretion concerning issues of public importance.

Gregory v. Ashcroft, 501 U.S. 452, 466-67 (1991);[2] *but see* Crumpacker v. Kansas, Dep't of

---

[2]*See also Justice White's concurrence in* Gregory, *recognizing that emphasis should not be placed on whether an employee actually* made *policy:*

> *Moreover, it should be remembered that the statutory exception refers to appointees "on the policymaking level," not "policymaking employees." Thus, whether or not judges actually* make *policy, they certainly are on the same* level *as policymaking officials in other branches of government and therefore are covered*

4

Human Res., 474 F.3d 747, 752 (10th Cir. 2007) (to qualify for the exemption, the employee "must (1) have been appointed by an elected official, and (2) acted as a policy maker").

Tested against the more forgiving Gregory formulation of the standard, it is clear that plaintiff falls within the "appointee on the policymaking level" exception. The undisputed facts establish that Hobart has a statutory council-manager form of government as outlined in 11 Okla. Stat. § 10-101 *et seq.*[3] The city manager, who is appointed by the city council, is the "chief executive officer and head of the administrative branch of the city government." 11 Okla. Stat. § 10-113. He or she is selected based on "executive and administrative qualifications." *Id*. § 10-112. He or she has the exclusive authority to appoint and remove the heads of administrative departments, other administrative officers, and city employees. *Id*. §§ 10-107, -113. The city manager prepares and administers the annual budget, and recommends any changes to the budget "he deems desirable." *Id*. § 10-113. The city manager keeps the council advised of the financial condition and needs of the city, and "make[s] recommendations as he deems desirable." *Id*.[4] In short, the city manager's duties,

---

*by the exception. The degree of responsibility vested in judges . . . is comparable to that of other officials . . . on the policymaking level.*

Gregory, 501 U.S. at 483 (White, J., concurring) (emphasis in original) (citations omitted).

[3]See Kelley, 542 F.3d at 810 (*"We focus principally on the responsibilities and powers inherent in the position, rather than on the actions of specific individuals, including plaintiffs, who hold or have held the position."*) (citing Anderson, *690 F.2d at 800-01, where the court examined the "job description of the position"*).

[4]*Both parties submitted the city ordinances of Hobart in effect at the time of plaintiff's employment [Doc. Nos. 22-15; 29-10]. These ordinances cite to and essentially track the language of the state statutes setting forth the council-manager form of government.*

as set out by statute and municipal ordinance, define a position involving considerable executive authority and discretion in running the city; it is not a position limited only to administrative duties. The city manager position is one on the policymaking level, "requiring the exercise of discretion concerning issues of public importance" as envisioned in Gregory, and therefore falls within the exemption from the ADEA's definition of "employee."[5]

The court would reach the same conclusion even under the narrower formulation suggested by Anderson and Crumpacker. Anderson considered whether a staff director for the City of Albuquerque's Human Rights Board fell within the "appointee at a policymaking level" or "immediate adviser" exception. Anderson, 690 F.2d at 800. The staff director worked under the direction of the Chief Administrative Officer of the city and "serve[d] as the principal administrative and staff assistant" to the city. *Id.* Plaintiff's position here as "chief executive officer" of the city and the nature of his duties imply management at a higher level than that of the "staff director" position, and involve a greater level of discretion and executive authority. Crumpacker presents a closer question in some respects, as the plaintiff there, a divisional head in a state government department, had some role in formulating division policies. Crumpacker, 474 F.3d at 750. However, that position —

---

[5]*Other courts have applied the exemption in similar fashion. See, e.g.,* Heck v. City of Freeport, *985 F.2d 305, 309-10 (7th Cir. 1993) (describing the question as "whether the position held by the individual authorizes, either directly or indirectly, meaningful input into governmental decisionmaking on issues where there is room for principled disagreement on goals or their implementation." (citations omitted));* Gregory v. Ashcroft, *898 F.2d 598, 603 (8th Cir. 1990), aff'd, 501 U.S. 452 (1991) ("We conclude that Congress's designation of 'appointee[s] on the policymaking level' as an exemption to the ADEA definition of 'employee' manifests an interest in excluding persons entrusted with extensive decisionmaking authority and discretionary power from the protection of the Act.").*

which appears to have been at least two levels down the hierarchy of executive/administrative authority from the elected decisionmakers — was not one appointed by elected officials and involved less executive authority, relative to state government, than a city manager such as plaintiff has as to city government in a statutory council-manager form of government.

Here, the undisputed facts make clear that the city manager position involved the exercise of substantial policymaking authority, particularly with respect to the city's workforce.  Hobart's personnel handbook—in effect during plaintiff's tenure as city manager—includes a section titled "Management Rights" which vest in the city manager the "right to exercise the customary functions of management.  Management includes the City Council, all supervisor and department heads, the Mayor, and the City Manager" [Doc. #22-14 at 8].  The city manager's management rights include the ability "to determine and change the size, composition, and qualification of the work force; to establish, change and/or abolish its <u>policies</u>, practices, rules, and regulations; . . . and to assign duties to employees in accordance with the needs and requirements of the City as determined by the City Manager or the City Council."  *Id*. (emphasis added).  This job description not only highlights the discretion the city manager has as to the workforce, including the ability to make policy as to that work force, but it also indicates that both the city manager and the city council have the right to determine the needs and requirements of the city as it related to duties assigned to employees.  The undisputed facts establish that the City Manager of Hobart is an

"appointee at the policymaking level."[6] He is not an "employee" within the meaning of the ADEA. Defendant is therefore entitled to judgment on plaintiff's ADEA claim.

## Conclusion

For the reasons stated, defendant's motion for summary judgment [Doc. #21] is **GRANTED** as to plaintiff's federal age claim. As there are no other federal claims in this case, the court declines to exercise supplemental jurisdiction over plaintiff's state law Burk tort claim. Plaintiff has not suggested any particular prejudice from the court declining to exercise supplemental jurisdiction here, and argues only the existence of the federal claim as a reason for this court to also address the state law claim. In those circumstances, and as the Burk claim arguably involves unresolved questions of state law best addressed in the first instance by a state court, this court concludes the further exercise of jurisdiction here is unwarranted. Plaintiff's state law claim is **DISMISSED without PREJUDICE**. 28 U.S.C. § 1367(c)(3).

**IT IS SO ORDERED**.

Dated this 2nd day of April, 2013.

JOE HEATON
UNITED STATES DISTRICT JUDGE

---

[6]*Plaintiff relies on Gomez, 91 F. Supp. 2d at 1004-05, which held that a city manager did not fall within the policymaking exemption. However, that case is distinguishable on its facts. In Gomez, the city manager–as the position was defined by the municipal charter–had administrative, rather than discretionary powers, and did not "formulate policy." Id. at 1004. Here, by contrast, the plaintiff's statutory duties were not merely administrative, but involved substantial discretion and participation in policymaking.*